**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| O.L., *by and through her mother*, V.L., and V.L.,<br>    Plaintiffs,<br><br>v.<br><br>COBB COUNTY SCHOOL DISTRICT, ALVIN THOMAS, NAKIA COTTON, and JESSICA COLEMAN,<br>    Defendants. | Civil Action No.<br>1:23-cv-03285-SDG |

**OPINION AND ORDER**

This matter is before the Court on Defendants Cobb County School District (the District), Alvin Thomas, Nakia Cotton, and Jessica Coleman's partial motion to dismiss [ECF 36]. For the following reasons, Defendants' motion is **GRANTED** as to the § 1983 claim against Thomas, Cotton, and Coleman (the Individual Defendants) and **DENIED** as to all other matters.

I.    **BACKGROUND**

This is a dispute over a disabled student's right to educational services. When Plaintiff O.L. was in seventh grade,[1] she suffered a severe adverse reaction to prescribed medication that caused a sudden loss of her cognitive and behavioral functioning, including the loss of her ability to talk, eat, or dress herself.[2] Plaintiff

---

[1]    ECF 1, ¶ 10.

[2]    *Id.* ¶ 16.

V.L.—O.L.'s mother—subsequently sought special educational services for O.L. from the District.[3] Plaintiffs allege that the District responded to V.L.'s efforts by refusing to implement the educational services that it had agreed to provide,[4] purposefully making it difficult for O.L. to access her schoolwork,[5] baselessly threatening to have O.L. jailed for truancy,[6] and ultimately disenrolling O.L. from school altogether.[7]

Plaintiffs accordingly filed the instant complaint, bringing the following four Counts:

I.      Discrimination under both Title II of the Americans with Disabilities Act (ADA) and § 504 of the Rehabilitation Act, against the District only;[8]

II.     Retaliation under both Title II and § 504, against all Defendants;[9]

III.    Under 42 U.S.C. § 1983, for violations of Title II, § 504, and the Equal Protection Clause of the Fourteenth Amendment, against all Defendants;[10] and

---

[3]    *Id.* ¶ 25.

[4]    *Id.* ¶ 27.

[5]    *Id.* ¶ 42.

[6]    *Id.* ¶ 44.

[7]    *Id.* ¶ 48.

[8]    *Id.* ¶¶ 9–61.

[9]    *Id.* ¶¶ 62–70.

[10]   *Id.* ¶¶ 71–84.

IV.    Under the Individuals with Disabilities Education Act, appealing an administrative law judge's due process ruling in favor of Defendants.[11]

Defendants now move to dismiss Counts I and III, as well as Plaintiffs' prayer for non-economic damages, under Federal Rule of Civil Procedure 12(b)(6).[12]

## II.    DISCUSSION

A complaint is subject to dismissal under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must allege facts that, when taken to be true, plausibly entitle the plaintiff to relief. *Ingram v. Kubik*, 30 F.4th 1241, 1255 (11th Cir. 2022). In evaluating complaints under Rule 12(b)(6), courts must assume the truth of all non-conclusory allegations, construe those allegations "in the light most favorable to the plaintiff," *Henley v. Payne*, 945 F.3d 1320, 1326 (11th Cir. 2019), and determine whether they support a reasonable inference of the defendant's liability, *McCullough v. Finley*, 907 F.3d 1324, 1335 (11th Cir. 2018). Under that standard, Defendants' motion is granted only as to the § 1983 claims in Count III against the Individual Defendants.

---

[11]   *Id.* ¶¶ 85–232.

[12]   ECF 39, at 11. Though Defendants initially moved to dismiss Count II as well, that portion of its motion was withdrawn at oral argument. ECF 50.

### A.    Count I for Discrimination Under Title II and § 504 Survives.

The District moves to dismiss Count I for disability discrimination under both Title II and § 504, which two statutes are analyzed together because "the same standards govern claims under both." *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1133 (11th Cir. 2019). Two different Title II/§ 504 standards are relevant here because Plaintiffs are seeking both injunctive and monetary relief.[13] For *injunctive* relief, the plaintiff must establish: (1) that she is a "qualified individual with a disability"; (2) that she was discriminated against by being "excluded from participation in or denied the benefits of a public entity's services, programs, or activities"; and (3) that the discrimination was "by reason of the plaintiff's disability." *Id*. at 1134. For *monetary* relief, the plaintiff must satisfy the above three elements and further show (4) the "deliberate indifference of someone whose actions can fairly be said to represent the actions of the organization." *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 350 (11th Cir. 2012). Deliberate indifference requires that an organizational official with the authority to address the alleged discrimination "knew that harm to a federally protected right was substantially likely and … failed to act on that likelihood." *Silberman*, 927 F.3d at 1134.

---

13    ECF 1, at 81–82.

Instructive here is *J.S. Jr. & M.S. ex rel. J.S. III v. Houston County Board of Education*, in which the Eleventh Circuit closely analyzed a Title II and § 504 discrimination claim in the context of primary education. 877 F.3d 979, 983 (11th Cir. 2017). *J.S.* held that a plaintiff who had allegedly been, "with some frequency, excluded and isolated from his classroom and peers on the basis of his disability," could proceed to trial on his discrimination claim for purposes of both injunctive and monetary relief. *Id.* at 987. As to injunctive relief, the court explained that the alleged wrongdoing constituted intentional discrimination because, unlike a mere "misdiagnosis or failure to provide appropriate remedial coursework," total exclusion from the classroom could subject the plaintiff to discrimination through "stigmatization and deprivation of opportunities for enriching interaction with fellow students." *Id.* (citing *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999)). And as to monetary relief, *J.S.* held that the defendant entity could be held liable for money damages if a jury found that certain school officials—the principal, the special and regular education teachers—knew that the plaintiff was being discriminated against but failed to stop it.

*J.S.* makes clear that Plaintiffs here have plausibly alleged discrimination under Title II and § 504 for both injunctive and monetary relief. Plaintiff have alleged the following:

- In March 2020,[14] O.L. suffered a "devastating medical reaction" to prescription medication that deprived her of the ability to "feed herself, talk, dress herself, stay continent, write, play the violin, do schoolwork independently, [or] tolerate sensory input (such as noise, lights, touch, etc.) to a significant level";[15]

- Beginning in March 2020, and continuing through § 504 meetings conducted between August and October 2020, V.L. advocated that the District provide O.L. with additional special educational resources, including in-home education;[16]

- The District pressured V.L. to withdraw O.L. from school until in-home services could be provided;[17]

- Following the issuance of a § 504 plan in October 2020,[18] the District not only refused to implement the accommodations provided for in the § 504 plan,[19] but obstructed Plaintiffs' access to educational resources by forbidding email communication between V.L. and O.L.'s teachers,[20] and intimidated Plaintiffs by threatening O.L. with arrest under false truancy charges;[21]

- In early December 2020, days before a scheduled meeting to determine O.L's eligibility for in-home services, O.L. was "intentionally dis-enrolled" from her middle school, and thereafter "totally excluded … from any educational access";[22]

---

14   *Id.* ¶ 13.

15   *Id.* ¶ 15.

16   *Id.* ¶¶ 17, 20, 21, 25, 27, 33.

17   *Id.* ¶ 26.

18   *Id.* ¶ 35.

19   *Id.* ¶ 40.

20   *Id.* ¶ 42.

21   *Id.* ¶ 44.

22   *Id.* ¶ 48.

- O.L. was disenrolled for her failure to complete class assignments, despite a § 504 plan excusing her from completing class assignments;[23]

- O.L. was disenrolled pursuant to an agreement among District supervisors[24] including Thomas (O.L.'s middle school principal[25]), Cotton (the District's "Supervisor for Alternative Services"[26]), and Coleman (the District's "Director of Special Education Compliance and Section 504 Coordinator"[27]), without V.L's knowledge;[28] and

- As of earlier this year,[29] O.L. had not attended school since she was disenrolled in December 2020.[30]

These allegations state a claim for injunctive relief[31] because they support the plausible inference that O.L., by reason of her disability, was excluded and isolated: not only from her physical classroom as in *J.S.*, but from education through her school district entirely; and not only "with some frequency" as in *J.S.*, but continuously from December 2020 until the present. Plaintiffs' allegations

---

[23]   *Id.* ¶ 46.

[24]   *Id.*

[25]   *Id.* ¶ 4.

[26]   *Id.* ¶ 5.

[27]   *Id.* ¶ 6.

[28]   *Id.* ¶ 47.

[29]   ECF 50 (Plaintiff represented at oral argument on May 28, 2024, that Cobb County had not re-enrolled O.L. in school).

[30]   ECF 1, ¶ 61.

[31]   Defendants argue that Count I should be dismissed solely for failure to allege deliberate indifference. ECF 39, at 3. But deliberate indifference is not a requirement for injunctive relief, meaning Defendants have technically failed to challenge the sufficiency of Count I as to injunctive relief.

further state a claim for monetary relief because they support the plausible inference that school officials—not only the school principal as in *J.S.*, but also District-level special education and compliance supervisors—knew that O.L. was being discriminated against and failed to take any action to stop it.

Defendants appear to argue in response that the complaint cannot give rise to an inference of deliberate indifference *because* the complaint expresses Plaintiffs' dissatisfaction with the District's provision of special educational services.[32] The Court struggles to make sense of this argument: Surely a complaint can do both. Defendants also, at least initially, argued that the complaint fails to identify a school official whose deliberate indifference can impute liability to the District.[33] But *J.S.* (and many other Eleventh Circuit cases) make clear that the District's deliberate indifference for Title II and § 504 purposes can plausibly be premised on the Individual Defendants' knowledge of the alleged discrimination. *See, e.g.,* *Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1256 (11th Cir. 2010) ("[W]e would not hesitate in concluding that [the principal], as the highest-ranking school official

---

[32]   *Id.* at 4–5.

[33]   ECF 36-1, at 12–15. This is one of the arguments that Defendants chose not to re-raise in their reply brief, after asserting it in their initial brief. Defendants seemed to indicate at oral argument that all such arguments should be deemed abandoned. ECF 50. The Court nevertheless addresses it for the sake of completeness.

on site at [the high school], was high enough on the chain-of-command to impute

liability to the School Board."). Defendants' motion is thus denied as to Count I.

> **B.    Count III Under 42 U.S.C. § 1983 Survives only as to the Equal Protection Clause Claim Against the District.**

Defendants also move to dismiss Count III, which asserts a claim under 42

U.S.C. § 1983 for violations of Title II, § 504, and the Equal Protection Clause of the

Fourteenth Amendment. Two preliminary issues: First, binding case law bars a

plaintiff from asserting a § 1983 claim premised on violations of Title II of the ADA

or § 504 of the Rehabilitation Act. The Eleventh Circuit held in *Holbrook v. City of*

*Alpharetta* that "a plaintiff may *not* maintain a section 1983 action … in addition to

… a Rehabilitation Act or ADA cause of action if the only alleged deprivation is of

… rights created by the Rehabilitation Act and the ADA." 112 F.3d 1522, 1531

(11th Cir. 1997) (emphasis added). *Holbrook* reasoned that, because the

Rehabilitation Act and the ADA had their own "extensive, comprehensive

remedial frameworks," violations of those statutes were meant to be redressed

within their internal frameworks, and not through other mechanisms like § 1983.

*Id.* The Court reads *Holbrook* as barring Plaintiffs' § 1983 claim to the extent that it

is premised on Title II and § 504 violations—and thus as cabining Defendants'

§ 1983 liability here to alleged violations of the Equal Protection Clause.

Second, the Court does not construe Defendants as arguing for dismissal of

Plaintiffs' § 1983 claim on the ground that the complaint fails to plausibly allege

an equal protection violation.[34] Rather, Defendants argue that Plaintiffs' § 1983 claim is subject to dismissal regardless of whether an equal protection violation has been plausibly alleged: as to the District, because the allegations in the complaint fail to plausibly impute liability to the District for the acts of its employees;[35] and as to the Individual Defendants, because the complaint fails to plausibly overcome their entitlement to qualified immunity.[36] These arguments are addressed in turn.

### 1. Count III Survives Against the District Because Plaintiffs Have Plausibly Alleged Acts of a Final Policymaker.

First, the District's *Monell* liability: Local governments like the District are not automatically liable under § 1983 for the wrongful acts of their employees. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Rather, they are liable only for wrongful acts that they "officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). One way to show that an act was officially sanctioned is to prove that it was taken by a "final policymaker," defined as the official (or officials) vested with final, unreviewable decision-making authority with respect to the act in question. *Holloman ex. rel. Holloman v. Harland*, 370 F.3d

---

[34]   In any case, because the merits of the equal protection claim were neither meaningfully briefed nor argued, the Court declines to rule on it at this time.

[35]   ECF 39, at 5–8.

[36]   *Id.* at 8–9.

1252, 1291–92 (11th Cir. 2004). But municipal liability[37] under § 1983 need not be premised on the affirmative act of a single final policymaker. *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016). As the Eleventh Circuit pointed out in *Hoefling*, municipalities have been held liable under a ratification theory, when "a subordinate public official's unconstitutional decision … is then adopted by someone who does have final policymaking authority"; or under a custom theory, when "final policymakers have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure." *Id. Hoefling* further held that, because "identifying and proving that a final policymaker acted on behalf of a municipality is an evidentiary standard, and not a pleading requirement," a plaintiff need not name a final policymaker in her complaint to survive a Rule 12(b)(6) motion to dismiss. *Id.* at 1280. All a plaintiff must do is assert allegations giving rise to the plausible inference "that official policy is responsible for a deprivation of civil rights."

Plaintiffs have done so here. Plaintiffs' complaint alleges the following:

- O.L.'s equal protection rights were violated by intentional actions taken by the Individual Defendants, who are O.L.'s middle school principal and District administrators with authority over special education services and compliance;[38]

---

[37] The Court refers to the District's liability under § 1983, somewhat imprecisely but in accordance with prevailing practice, as "municipal liability."

[38] ECF 1, ¶¶ 4–6, 72.

- O.L's equal protection rights were violated pursuant to an unofficial District policy to systematically underserve disabled students requiring in-home educational services,[39]

- V.L. knows of a recent 2019 case in which the District similarly failed to provide adequate in-home educational services to a disabled student, during which counsel for the District asserted that "5 hours a week is a lot of hours for disabled children being educated in the home,"[40] a position clearly inconsistent with state and federal law;[41]

- V.L. reported the violation of O.L's equal protection rights to District administration, an act that Defendant Cotton described as going to the "county";[42] and

- District administration failed to respond to the violation of O.L.'s equal protection rights.[43]

These allegations permit the reasonable inference that the District is responsible for the alleged equal protection violation. The District may be liable because the Individual Defendants were final policymakers with regard to those acts—in particular, disenrolling O.L. from the school district and providing inadequate in-

---

[39]   *Id.* ¶¶ 78, 80–82.

[40]   *Id.* ¶ 77. Plaintiffs' brief references a separate, 2024 legal proceeding relating to the District's denial of in-home educational services to a disabled student. ECF 37, at 19 n.4. Because the existence of that proceeding was not alleged in the complaint, the Court will not consider it in ruling on the instant motion to dismiss. *Dorman v. Aronofsky*, 36 F.4th 1306, 1317 (11th Cir. 2022) ("[F]acts contained in a motion or brief cannot substitute for missing allegations in the complaint.").

[41]   ECF 1, ¶¶ 57, 72.

[42]   *Id.* ¶ 43.

[43]   *Id.* ¶ 41.

12

home services[44]—constituting the alleged violation. Or, the District may be liable

because a final policymaker acquiesced to the Individual Defendants' alleged

custom—a custom exemplified by the District's assertion that five hours per week

of in-home education for disabled students would be "a lot"—of denying

educational services to a subset of disabled students "as a matter of course."[45] Or,

the District may be liable because a final policymaker ratified the Individual

Defendants' alleged violation of O.L.'s equal protection rights. Though Plaintiffs

"may ultimately have to identify (and provide proof concerning) a single final

policymaker in order to survive summary judgment or prevail at trial," *id.*, their

failure to conclusively do so in their complaint is not fatal to their § 1983 claim,

and Defendants' motion to dismiss Count III as to the District is denied.

### 2. Count III Does Not Survive Against the Individual Defendants Because They Are Protected by Qualified Immunity.

Second, the Individual Defendants' entitlement to qualified immunity:

Qualified immunity protects individual public officials acting within the scope of

their discretionary authority "insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would

have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Because Plaintiffs do

---

44    *Id.* ¶ 76.

45    *Id.* ¶ 82.

not dispute that the Individual Defendants were acting within their discretionary authority for purposes of their § 1983 claim, Plaintiffs bear the burden of showing that qualified immunity does not apply to their actions. *Johnson v. City of Miami Beach*, 18 F.4th 1267, 1272 (11th Cir. 2021). Qualified immunity is a two-pronged inquiry. The first prong concerns "whether the plaintiff's allegations, if true, establish a constitutional violation"; the second prong concerns "whether the right violated was clearly established." *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010). The inquiry may proceed "in whatever order is deemed most appropriate for the case." *Id.*

Defendants, as previously noted, have not meaningfully contested the first prong.[46] As it turns out, Plaintiffs have not meaningfully contested the second. Qualified immunity cannot be analyzed unless the allegedly violated right is defined at some level of specificity. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Axiomatic statements of law—for example, that using excessive force violates the Fourth Amendment—are rarely helpful in parsing the factually particularized issues arising under qualified immunity. *Corbitt v. Vickers*, 929 F.3d 1304, 1316 (11th Cir. 2019). And again, in cases like this one, where it is undisputed that the

---

46    *Supra* at 9–10.

relevant acts were taken under the public officials' discretionary authority, it is the *plaintiff*'s burden to show that qualified immunity does not apply.

Yet here, Plaintiffs have failed to cite to *any* case, from *any* court, involving an equal protection violation in *any* context—much less an equal protection violation premised on the denial of educational benefits to a disabled student. (The one case Plaintiffs do cite—*Goss v. Lopez*, 419 U.S. 565 (1975)—involved a Fourteenth Amendment *due process* claim.[47]) The Court's own research has likewise turned up little relevant case law, and none of it controlling—nothing speaking with "obvious clarity" on the constitutionality of the Individual Defendants' actions in this case. *Corbitt*, 929 F.3d at 1316. Plaintiffs have failed— have scarcely attempted—to explain what rights disabled students have under the Equal Protection Clause, or how those rights can be violated, or how the allegations here embody such a violation. Plaintiffs' position on qualified immunity is nothing more or less than the naked assertion, unadorned by case law, unvarnished by argument, that O.L. being denied the equal protection of the laws violates the Fourteenth Amendment, which law is clearly established by virtue of having been ratified 150 years ago.[48] That is not enough. Plaintiffs have failed to carry their burden of showing that the Individual Defendants are not

---

[47]   ECF 37, at 24.

[48]   *Id.*

entitled to qualified immunity for the acts alleged in the complaint, and Plaintiffs'

§ 1983 claim as to the Individual Defendants is accordingly dismissed.

### C. Plaintiffs' Prayer for Non-Economic Damages Is Not Grounds for Dismissal of Any Claim.

Defendants' motion to dismiss also asserts that Plaintiffs have improperly

requested a non-economic damages remedy. But as the Eleventh Circuit recently

explained, "requesting an improper remedy is not fatal to a claim," and "[t]hat a

plaintiff might misconceive his remedy does not warrant dismissal of the

complaint unless he is entitled to no relief under any state of facts." *A.W. ex rel.*

*J.W. v. Coweta Cnty. Sch. Dist.*, 110 F.4th 1309, 1315 (11th Cir. 2024). Because

Defendants do not argue that the Court is incapable of granting Plaintiffs any relief

for the violations they allege, Plaintiffs' request for non-economic damages is not

a ground for dismissal of any claim.

## III. CONCLUSION

Defendants' motion to dismiss [ECF 36] is **GRANTED** as to the § 1983 claim

against Thomas, Cotton, and Coleman and **DENIED** as to all other matters.

Plaintiffs' motion for leave to file an amended complaint [ECF 38] is **GRANTED**.

Plaintiffs may file an amended complaint by October 14, 2024, if they wish.

Defendants must answer the original complaint, or answer or respond to any

newly filed amended complaint, by October 28, 2024.

The parties' Joint Preliminary Report and Discovery Plan will be due within 30 days of Defendants' answer.

**SO ORDERED** this 30th day of September, 2024.

_____
Steven D. Grimberg
United States District Judge